UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL DENZER and STEVEN DENZER,          Case No. 22-10868

     Plaintiffs,                          F. Kay Behm
v.                                        United States District Judge

UNITED STATES OF AMERICA,

     Defendants.
_____ /

**ORDER GRANTING PLAINITFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 33)**

This case is before the court on Plaintiffs Sheryl and Steven Denzer's motion

for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

(ECF No. 33).  Plaintiffs filed their initial complaint against Defendants United

States of America, Trumbull Insurance Company, and State Farm Mutual

Automobile Insurance Company on April 22, 2022.  (ECF No. 1).[1]  Their complaint

seeks to recover damages for the injuries Plaintiff Sheryl Denzer ("Plaintiff

Denzer")[2] suffered as a result of a motor vehicle accident involving a United

---

[1] This case was initially before District Judge Denise Page Hood, but was reassigned to
the undersigned on February 6, 2023.

[2] While both Plaintiffs share the same last name, the court will refer to Plaintiff Sheryl
Denzer as "Plaintiff Denzer" throughout the motion, as the focus of this case is on the injuries

States Postal Service (USPS) employee.  *Id.*, PageID.2.  On May 22, 2023,

consistent with a stipulation between all relevant parties, the court entered an

order dismissing Plaintiffs' claims against Defendants Trumbull and State Farm.

(ECF No. 29).  As such, this case now proceeds against Defendant United States of

America ("Defendant") only.

Plaintiffs filed the present motion for partial summary judgment on August

28, 2023, arguing that there is no genuine dispute of material fact remaining that

Defendant's postal employee acted negligently and Plaintiff Denzer suffered from

a "threshold injury" under Michigan law.  (ECF No. 33).  The court held a hearing

on this motion on March 13, 2024, and both parties participated in oral argument.

(*See* ECF No. 27).  For the reasons stated below, the court **GRANTS** Plaintiffs'

motion.

## I.      FACTUAL BACKGROUND

This action arises from an automobile accident that occurred on May 15,

2020.  (ECF No. 1, PageID.2).  Many of the facts underlying this case are not

disputed by either party.  (*See* ECF No. 38, PageID.878) ("Defendant does not

dispute…").  At the time of the accident, Vanessa Stokes was employed by the

---

she suffered as a result of the subject car accident.  Where the court needs to refer to Plaintiff
Steven Denzer, it will address him as such.

USPS and was driving a mail truck within the scope of her employment.  (ECF No. 1, PageID.4); (ECF No. 40-1,[3] PageID.1142, Deposition of Vanessa Stokes) ("Q. At the time of the accident you were driving a vehicle for the USPS, correct? A. Yes.").  Both parties, Stokes and Plaintiff Denzer, were traveling "north on S. Lapeer Road in the vicinity of E. Drahner Road in Oxford Township, Oakland County, Michigan" when Stokes suddenly "rear-ended the motor vehicle Plaintiff Denzer was driving, causing her motor vehicle in turn to collide into the rear of the motor vehicle in front of it."  (ECF No. 1, PageID.4).  While the weather conditions were clear at the time of the accident, both Stokes and Plaintiff Denzer reported heavy construction activity in the area and noted that cars were moving at a "stop and go" pace.  (ECF No. 40-1, PageID.1146) ("Q. But it wasn't raining or snowing or anything like that? A. Definitely not snowing. I don't remember rain."); (ECF No. 40-7, PageID.826, Deposition of Sheryl Denzer) ("And the road was being worked on, and construction stopped traffic in my lane. There was only one lane open.").  Stokes later testified that the collision was her fault, and Plaintiff Denzer did not do anything to cause the accident.  (ECF No. 40-1, PageID.1141 ("Q. Okay.

---

[3] Plaintiffs' exhibits and their motion for partial summary judgment were initially filed as one document, ECF No. 33.  On March 11, 2024, pursuant to a request from the court, Plaintiffs re-filed their exhibits as separate attachments, in compliance with Eastern District of Michigan E-File Rules 19(b)(1) and (2).  (ECF Nos. 40-1–40-9).

Do you believe you were at fault for causing that accident? A. I was.");
PageID.1148 ("Q. Do you believe the other vehicle that was driving the HHR did
anything to cause or contribute to causing the accident? A. No.")).  She testified
that, immediately before the accident, she remembers "distinctly like a bulldozer
bucket real close to the road, it was like a one lane closer thing, and I looked over
for a split second, saw that dump truck thing, and I looked back over and the gal
in front of me was stopped…God, I hit the brakes and I couldn't stop before I hit
her."  *Id.*, PageID.1145.

Plaintiff Denzer alleges she suffered the following injuries because of the
accident: "injuries to her head, neck, shoulders, chest, abdomen including her
abdominal wall, back, right hip, right lower extremity including right knee and
right ankle and left knee; aggravation of the pre-existing condition of her neck,
back and abdomen; and post-traumatic headaches and anxiety, depression and
post-traumatic stress."  (ECF No. 1, PageID.4-5).  She argues these injuries have
"impaired her ability to lead her normal life" and have "prevented her from
completing activities of daily living, such as cooking, cleaning, vacuuming, []
washing dishes," gardening, and working her job as a cashier at Taco Bell.  (ECF
No. 33, PageID.702).  Defendant disputes that Plaintiff Denzer was employed at
Taco Bell at the time of the accident.  (ECF No. 38, PageID.880).

Plaintiffs' current motion focuses on two of Plaintiff Denzer's injuries: a rotator cuff tear and the exacerbation of an ongoing lumbar condition.  First, Plaintiff Denzer alleges she suffered a rotator cuff tear in her left shoulder which "necessitated a left shoulder arthroscopic rotator cuff repair" and has since "impaired her ability to use her left arm."  (ECF No. 33, PageID.701).  Plaintiff Denzer's shoulder surgeon, Dr. Kyle Anderson, testified that "[b]ased on [his] review of the MRI, history taken of Ms. Denzer, and [his] complete physical examination of her" he agreed that the rotator cuff tear was either caused or aggravated by the relevant motor vehicle crash.[4]  (ECF No. 38-11, PageID.961, Deposition of Dr. Anderson) ("Q…do you have an opinion more likely or not whether or not the full-thickness rotator cuff tear of her left shoulder was caused by or aggravated by the 5/15/2020 motor vehicle crash?...THE WITNESS: Yes.").  Plaintiff Denzer also attended an Independent Medical Evaluation (IME) with Dr. Nicholas Dutcheshen who issued a report stating "[i]n my opinion, as related to the left shoulder she sustained a rotator cuff tear or at least had an aggravation of a preexisting tear" as a result of the subject accident.  (ECF No. 40-4, PageID.1171,

---

[4] Defendant's response to Plaintiff's motion argues that both Dr. Vibert and Dr. Anderson's opinion testimony about the cause of her injuries "fail[] to meet the standards of Federal Rule of Evidence 702 and should be excluded."  (ECF No. 38, PageID.884).  However, because the court declines to make a finding as to causation, the court also declines to address the issue of admissibility at this time.

Dr. Nicholas Dutcheshen PIP IME Report).  While Defendant does not dispute that

Plaintiff Denzer underwent surgical repair of her left rotator cuff, that she

complained of impaired ability in her left arm, or that her treating physicians

observed a reduced range of motion and weakness in her left shoulder, they

dispute that this injury was caused by the subject accident.  (ECF No. 38,

PageID.879).

Plaintiff Denzer also claims she suffered "an aggravation of stenosis and

spondylolisthesis and Grade 1 anterolisthesis at L4-L5" after the accident, which

"necessitated a decompressive lumbar laminectomy at L4-L5 with fusion."  (ECF

No. 33, PageID.701).  She argues this injury "impaired her ability to stand for more

than five minutes without pain."  *Id.*  Again, Defendant does not dispute that

Plaintiff Denzer underwent lumbar surgery in April 2023, that she complained to

her doctor about her ability to stand, or that she reported to Dr. Vibert increased

pain after standing for more than five minutes.  (ECF No. 38, PageID.879); (ECF

No. 40-5, Affidavit of Brady T. Vibert, MD).  Dr. Vibert submitted an affidavit

stating that "[w]ithin a reasonable degree of medical certainty" these injuries

occurred or were aggravated "as a result of her May 15, 2020 automobile

accident."  (ECF No. 40-5, PageID.1178).  However, Defendant again denies that

the aggravation of Plaintiff Denzer's lumbar condition was caused by the May 2020 accident.  (ECF No. 38, PageID.879).

## II.    STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Further, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Id.* at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at

254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Id*. at 327.

### III.   ANALYSIS

Relevant to this motion, Plaintiffs' complaint brings a claim against Defendant for "auto negligence" (Count I).  While sovereign immunity generally bars claims against the United States, the Federal Tort Claims Act ("FTCA") "provides a limited waiver of sovereign immunity and subjects the United States to liability for certain 'tort claims, in the same manner and to the same extent as a private individual under like circumstances...'"  28 U.S.C. § 2674; *Bates v. United*

*States*, No. CV 18-13028, 2021 WL 1144116, at *3 (E.D. Mich. Mar. 25, 2021).  This

includes claims for negligence committed by federal employees in the course of

their employment.  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006).  To

determine liability for these claims under the FTCA, the court must apply the law

of the state where the relevant acts occurred.  *See Premo v. United States*, 599

F.3d 540, 545 (6th Cir. 2010) (citing *Molzof v. United States*, 502 U.S. 301, 305

(1992)) ("Liability under the FTCA is usually determined by referencing state

law.").  Because the relevant motor vehicle accident occurred in Michigan, the

court must apply Michigan law.  *Id.*

　　　To establish a prima facie case of negligence under Michigan law, a plaintiff

must satisfy the following elements: "(1) the defendant owed the plaintiff a legal

duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered

damages, and (4) the defendant's breach was a proximate cause of the plaintiff's

damages."  *Powell-Murphy v. Revitalizing Auto Communities Env't Response Tr.*,

333 Mich. App. 234, 243 (2020) (citing *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651,

660 (2012)).  When the alleged negligence involves a motor vehicle accident,

under Michigan's No-Fault Act an individual must also establish they suffered a

"threshold injury" as part of the element of damages.  Mich. Comp. Laws §

500.3135.  Specifically, damages for noneconomic loss are recoverable only if the

injured person "has suffered death, serious impairment of body function, or permanent serious disfigurement."  Mich. Comp. Laws. § 500.3135(1).

Plaintiffs' motion argues they are entitled to partial summary judgment as to: (1) the element of breach, as there is no genuine dispute of material fact that Defendant's postal employee breached the duty of care owed to Plaintiff Sheryl Denzer when she rear-ended Plaintiff's motor vehicle," and (2) the threshold question of "serious impairment" as part of the element of damages, as "there is no genuine dispute of material fact that Plaintiff Sheryl Denzer sustained a 'threshold' injury under Mich. Comp. Laws § 500.3135."  (ECF No. 33, PageID.693). The court will address each of these arguments in turn.

A.  Breach of Duty

Plaintiffs' motion argues there is no question of fact remaining that "Defendant breached its duty of care to Plaintiff when its employee rear-ended Plaintiff's vehicle."  (ECF No. 33, PageID.703).  They point to Mich. Comp. Laws § 257.402(a), which states, in part:

> In any action, in any court in this state when it is shown
> by competent evidence, that a vehicle traveling in a
> certain direction, overtook and struck the rear end of
> another vehicle proceeding in the same direction, or
> lawfully standing upon any highway within this state, the
> driver or operator of such first mentioned vehicle shall
> be deemed prima facie guilty of negligence. This section

> shall apply, in appropriate cases, to the owner of such
> first mentioned vehicle and to the employer of its driver
> or operator.

Plaintiffs also cite Mich. Comp. Laws § 257.627(1), the "assured-clear-distance-ahead statute," which requires:

> A person operating a vehicle on a highway shall operate
> that vehicle at a careful and prudent speed not greater
> than nor less than is reasonable and proper, having due
> regard to the traffic, surface, and width of the highway
> and of any other condition existing at the time. An
> individual shall not operate a vehicle on a highway at a
> speed greater than that which will permit a stop within
> the assured, clear distance ahead. A violation of this
> subsection shall be known and may be referred to as a
> violation of the basic speed law or "VBSL."

Violation of this statute also constitutes negligence *per se*. *McKinney v. Anderson*, 373 Mich. 414, 419 (1964).

While a violation of these statutes may constitute negligence *per se*, this is a rebuttable presumption which may be "overcome…when the collision is proven to have occurred in the midst of a sudden emergency not of defendants' making," known as the "sudden emergency doctrine." *Id.* To fall under the sudden emergency doctrine, "the circumstances attending the accident must present a situation that is 'unusual or unsuspected.'" *Vander Laan v. Miedema*, 385 Mich. 226, 232 (1971) (citing *Barringer v. Arnold*, 358 Mich. 594, 599 (1960)). "Unusual"

circumstances are those "which vary from the everyday traffic routine confronting

the motorist." *Amick v. Baller*, 102 Mich. App. 339, 341 (Mich. 1980).

"Unsuspected" circumstances are those "which may appear in the everyday

movement of traffic, but which take place so suddenly that the normal

expectations of due and ordinary care are again modified by the attenuating

factual conditions." *Id*. at 341-42.

Plaintiffs argue there were no unusual or unsuspected circumstances

underlying the crash between Stokes and Plaintiff Denzer.  While the weather was

"cloudy and gloomy," it was not raining or snowing.  (ECF No. 40-1, PageID.1146)

("Q. But it wasn't raining or snowing or anything like that? A. Definitely not

snowing. I don't remember rain.").  Additionally, Stokes testified there was

"extreme construction" in the area, but it had been ongoing for a few months,

and she drove that route every day.  *Id.* ("Q. You drive through that intersection if

not daily, certainly every day that you're working? A. Oh, yeah. Every day I'm

working, yeah."), ("Q. So the construction that had been going on for a couple

months, that was not, you know, a surprise to you or something you were not

expecting? A. Oh, no. Right, it had been going on for a while.").  Defendant, on the

other hand, argues "a reasonable factfinder could determine that Stokes met the

reasonable person standard because she encountered an unexpected potential

hazard immediately before the collision with the rear of Denzer's vehicle," namely a "moving bulldozer bucket close to her lane of travel." (ECF No. 38, PageID.887-88).

Here, the evidence presented to the court along with and in opposition to the motion for partial summary judgment does not reveal the existence of any "emergency" prior to the relevant accident as a matter of law. Stokes testified that she was momentarily distracted by "a bulldozer bucket real close to the road," but did not claim it ever entered her lane or posed any danger to her vehicle. (ECF No. 40-1, PageID.1147) ("Like I said, there was a lot of, you know, land moving equipment, bulldozers and whatever, just a ton of stuff right there."). She did not testify that the bulldozer required her to swerve to get out of the way or brake suddenly, and it did not otherwise obstruct her view of the road in front of her. *See Farris for Farris v. Bui*, 147 Mich. App. 477, 479 (1985) (finding sudden emergency doctrine applied where a pedestrian who was waiting on the side of the road suddenly, and without warning, ran in front of her vehicle); *Lewis v. Cameron*, No. 330743, 2017 WL 1489001, at *1 (Mich. Ct. App. Apr. 25, 2017) (finding the sudden emergency doctrine applied where a car accident occurred in front of the defendant, which caused snow to be thrown at defendant's car and fully obstructed his view of the road."). She merely testified that she observed

the bulldozer, looked away from the road for a few seconds, and then did not

have a chance to stop in time to avoid an accident.  *See Vander Laan*, 385 Mich. at

233 (sudden emergency doctrine did not apply where the driver "glanced in

[their] rearview mirror after hitting a bump in the road" for a "second or so" and

rear-ended the car in front of them as a result); *see also Kingsbury v. Progressive

Michigan Ins. Co.*, No. 19-CV-13063, 2020 WL 2781825, at *3 (E.D. Mich. May 29,

2020) (discussing *Vander Laan*) ("Because the cause of the accident (i.e., the

defendant driver looking into his rear-view mirror instead of watching the road)

was neither unusual nor unsuspected, the trial court erred in giving the sudden

emergency instruction.").  Even viewing the facts in the light most favorable to

Defendant, being briefly distracted by a bulldozer operating in a construction

zone, which had been present for several months, does not constitute a

"suddenly revealed and totally unsuspected peril."  *Manning v. Cheboygan Area

Sch.*, 76 Mich. App. 700, 703 (1977).  Because the sudden emergency doctrine

does not apply, there is no question of fact remaining that Defendant was

negligent *per se* in rear-ending Plaintiff Denzer's vehicle and Plaintiffs are entitled

to summary judgment on the element of breach.

B. <u>Threshold Injury</u>

Before an individual may be entitled to claim noneconomic damages in an automobile negligence case, it must first be shown they suffered a "threshold injury."  As stated above, Michigan law defines a threshold injury as "death, serious impairment of body function, or permanent serious disfigurement."  Mich. Comp. Laws. § 500.3135(1).  Whether a person has suffered a "serious impairment" is a question of law for the court to decide under two circumstances: (a) where "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or (b) where "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person suffered a serious impairment of body function or permanent serious disfigurement."  Mich. Comp. Laws § 500.3135(2)(a)(i), (ii).  Michigan law generally defines a "serious impairment of body function" as:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the [individual's] capacity to live in his or her normal manner of living.

*Piccione as Next Friend of Piccione v. Gillette*, 327 Mich. App. 16, 20 (2019) (citing

*McCormick v. Carrier*, 487 Mich. 180, 215 (2010)).  There is "no bright-line rule or

checklist to follow" in making this determination and the court should focus on

the specific circumstances of each case.  *Id.* (citing *Chouman v. Home Owners Ins.

Co.*, 293 Mich. App. 434, 441 (2011)).  The key question is "whether plaintiff's

ability to lead a normal life has been affected by comparing the plaintiff's life

before and after the injury."  *Nelson v. Dubose*, 291 Mich. App. 496, 499 (2011)

(citing *McCormick*, 487 Mich. at 200, 202-03).

Plaintiffs' motion argues there is no genuine dispute that Plaintiff Denzer's

rotator cuff tear and lumbar spinal injury "breach the 'threshold' of Mich. Comp.

Laws § 500.3135."  (ECF No. 33, PageID.708).  Given the undisputed facts of this

case, there is currently "no factual dispute concerning the nature and extent" of

Plaintiff Denzer's injuries and the court agrees that her rotator cuff tear and

lumbar condition rise to the level of "threshold injuries" under Michigan law.[5]

---

[5] Defendant, alternatively, focuses on the element of causation, arguing that "Denzer fails to establish that the May 2020 collision caused her lumbar condition or rotator-cuff tear." (ECF No. 38, PageID.883).  Defendant is correct that, to sustain a negligence claim under Michigan law, a plaintiff must "demonstrate a causal relationship between his injuries and the accident."  *Haliw v. Sterling Heights*, 464 Mich. 297, 309-10 (2001).  However, Plaintiffs' motion for partial summary judgment does not seek summary judgment on the issue of causation. Rather, their motion is limited to the question of whether Plaintiff Denzer's injuries rose to the level of a threshold injury under Mich. Comp. Laws § 500.3135.  (ECF No. 33, PageID.708).  To the extent the "threshold injury" inquiry involves a question of causation, the court declines to make any determination at this point.

i.    *Rotator Cuff Tear*

It is not disputed that Plaintiff Denzer suffered a tear in her left rotator cuff, which was addressed by surgery in March of 2022.  (ECF No. 40-3, PageID.1165, Operative Summary).  The facts of this case indicate that Plaintiff Denzer's rotator cuff tear was both "observable and perceivable from actual symptoms or conditions."  *Piccione*, 327 Mich. App. at 20 (citation omitted).  In early 2022, Plaintiff Denzer visited Dr. Kyle Anderson complaining of significant pain, weakness, and a limited range of motion in her shoulder.  (ECF No. 40-2, PageID.1157, Dr. Kyle Anderson Medical Records).  Dr. Anderson reviewed an MRI of Plaintiff Denzer's shoulder, which revealed a "small full-thickness distal supraspinatus tear which is around 1 cm in size."  *Id.*, PageID.1158.  He diagnosed her with a "complete rotator cuff tear or rupture of left shoulder, not specified as traumatic."  *Id.*  The facts of this case also reveal that Plaintiff Denzer's rotator cuff tear impacted a "body function of value, significance, or consequence" to her.  *Piccione*, 327 Mich. App. at 20 (citation omitted).  Plaintiff Denzer testified that she had significantly limited mobility and could not reach behind her in order to complete many basic daily tasks.  (ECF No. 40-7, PageID.1244).  An Independent Medical Examination (IME) completed by Dr. Nicholas T. Dutcheshen in May of 2022 noted that Plaintiff Denzer "was in a sling for approximately six

weeks" following her surgery and did "not have her full range of motion or her

strength back" at the time of their visit.  (ECF No. 40-4, PageID.1169).  Dr.

Dutcheshen also noted that Plaintiff Denzer suffered from a "decreased range of

motion bilaterally," a tremor when performing active ranges of motion, and

reduced external and internal rotation.  *Id.*, PageID.1171.  Finally, the facts of this

case indicate that her rotator cuff tear, and the subsequent treatment, affected

her general ability to live her normal life, at least until her surgery and during her

recovery period.  *Piccione*, 327 Mich. App. at 20 (citation omitted).  She testified

that her shoulder injury affected her ability to "wash properly in the shower," and

she had to sleep on the couch for approximately six months.  (ECF No. 40-7,

PageID.1244).  Additionally, she testified that Plaintiff Steven Denzer had to help

her get dressed, as she could not reach to put on certain items without help.  *Id.*,

PageID.1247-48.  While her surgeon testified that she would reach "maximum

medical improvement September 29, 2022" and would likely "be able to return

back to full gainful employment without restrictions," this does not foreclose a

finding that she suffered a serious impairment during her recovery period.  *Id.*,

PageID.1173-74.  "An injury need not be permanent in order to be serious," and

"an impairment of short duration may constitute a serious impairment of a body

function if its effect on the plaintiff's life is extensive."  *Williams v. Medukas*, 266

Mich. App. 505, 508 (2005) (citing *Kern v. Blethen-Coluni*, 240 Mich. App. 333, 341

(2000); *Kreiner v. Fischer*, 471 Mich. 109, 134 (2004)).   Considering these facts,

there is no question remaining that Plaintiff Denzer's rotator cuff tear rises to the

level of a "serious impairment of body function" under Mich. Comp. Laws §

500.3135(1).   Even viewing the facts in the light most favorable to Defendant,

Plaintiff Denzer's injury, albeit temporary, had a significant influence on her

capacity to live in her "normal manner of living."   *McCormick*, 487 Mich. at 202.

  ii.    *Lumbar Condition*

       It is also not contested that Plaintiff Denzer suffered from some degree of

severe lower back pain after the subject accident.   Plaintiff Denzer's medical

records indicate that, following the accident, she was "dealing with back pain, low

back pain, left lower extremity radiculopathy to include pain, numbness, and

tingling."  (ECF No. 40-6, PageID.1186, Dr. Brady Vibert Medical Records).

Following a review of Plaintiff Denzer's medical records, x-rays, and MRI Reports,

her lower back pain was "observable and perceivable" and was formally

diagnosed as "L4-L5 stenosis and spondylolisthesis" and "Grade 1 anterolisthesis

at L4-L5."  (ECF No. 40-5, PageID.1178).   As a result, Plaintiff Denzer "needed a

decompressive lumbar laminectomy at L4-L5 with a fusion," which she underwent

on April 24, 2023.  *Id.*  The facts of this case also reveal that Plaintiff Denzer's

lumbar condition impacted a "body function of value, significance, or consequence" to her, namely her mobility and ability to stand for more than five minutes.  *Piccione*, 327 Mich. App. at 20 (citation omitted).  When Plaintiff Denzer visited Dr. Vibert in March of 2023, his report states: "[s]he is miserable…[s]he cannot stand for more than a couple of minutes before she has to sit down."  (ECF No. 40-6, PageID.1181).  Dr. Vibert also testified that, in his medical opinion, Plaintiff Denzer's "condition completely restricted her from activities of daily living requiring her to stand for more than 5 minutes; including but not limited to cooking, cleaning, vacuuming, and washing dishes" and "completely restricted her from working any job that required her to stand for more than 5 minutes; including her pre-accident employment as a cashier at Taco Bell."  (ECF No. 40-5, PageID.1179).  Finally, the facts of this case again indicate that her lumbar condition affected her general ability to live her normal life.  Plaintiff Denzer testified that she had previously worked as a cashier at Taco Bell for over 16 years.  (ECF No. 33, PageID.710).  Because of her lumbar injury, Plaintiff Denzer testified that she could no longer stand for more than five minutes and would be unable to return to her job as a cashier.  (ECF No. 40-7, PageID.1222) ("I can't stand that long.").  At her deposition she testified that she had attempted to get a new job with Advantage Solutions passing out food samples at a grocery store,

but was concerned about her ability to stand for the entire shift.  *Id.*, PageID.1221

("Last Sunday I worked for one day for a company. I'm going to be passing out

samples, if I can stand that long. I've done one day.").  Plaintiff Denzer also

testified that she could no longer complete many household chores, such as

dishes, cooking, vacuuming, and dusting because of her back pain.  *Id.*,

PageID.1250 ("Dishes, cooking, vacuuming, dusting. Anything that required me to

stand for more than five minutes was difficult…no vacuuming at all, period,

since."), ("I do the dishes as long as I can. Standing is a problem for any period of

time…").  Considering all of these facts, there is again no question remaining that

Plaintiff Denzer's lumbar condition rises to the level of a "serious impairment of

body function" under Mich. Comp. Laws § 500.3135(1).  Even viewing the facts in

the light most favorable to Defendant, Plaintiff Denzer's injury had a significant

influence on her capacity to live in her "normal manner of living," as she was not

able to return to work as a cashier and could not complete basic household

chores.  *McCormick*, 487 Mich. at 202.

## IV.    CONCLUSION

Given the uncontested facts and evidence presented in support of

Plaintiffs' motion, the court finds that: (1) Defendant's employee was negligent

*per se* in causing the accident and the sudden emergency doctrine does not apply,

and (2) Plaintiff Denzer's shoulder and lumbar injuries rise to the level of a "threshold injury" under Mich. Comp. Laws § 500.3535(1) as a matter of law. Likewise, Plaintiffs' motion for partial summary judgment is **GRANTED.**  There is, however, a question of fact remaining as to whether Plaintiff Denzer's injuries were caused by the accident and what damages she may be entitled to. Additionally, there is a question of fact remaining as to whether Plaintiff Steven Denzer is entitled to any damages under his derivative claim (Count II).

**SO ORDERED**.

Date: March 15, 2024                          s/F. Kay Behm
                                              F. Kay Behm
                                              United States District Judge